1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  JAIME B.,                                 Case No.:  19-cv-02431-JLB

12                             Plaintiff,     **ORDER RE: PLAINTIFF'S MERITS**
                                              **BRIEF**
13  v.

14  KILOLO KIJAKAZI,                          **[ECF No. 23]**
    Commissioner of Social Security,
15
                              Defendant.[1]
16

17

18

19        On December 18, 2019, Plaintiff Jaime B. ("Plaintiff") filed this action pursuant to

20  42 U.S.C. § 405(g) seeking judicial review of the final administrative decision by the

21  Commissioner of Social Security ("Commissioner") denying his application for a period

22  of disability and disability insurance benefits.  (*See* ECF No. 1; AR[2] 168–69.)

23  ///

24

25  _____

26  [1]     Kilolo Kijakazi is hereby substituted as the defendant in this case pursuant to Federal
    Rule of Civil Procedure 25(d).
27  [2]     "AR" refers to the Certified Administrative Record filed on June 11, 2021.  (ECF
28  No. 15.)

                                            1

Now pending before the Court and ready for decision is Plaintiff's merits brief in support of remand. (ECF No. 23.) The Commissioner filed an opposition to Plaintiff's merits brief (ECF No. 24), and Plaintiff filed a reply (ECF No. 25). For the reasons set forth herein, the Court **DENIES** Plaintiff's merits brief.[3]

## I.   PROCEDURAL BACKGROUND

On August 8, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning May 1, 2016. (AR 168–69.) After his application was denied initially and upon reconsideration (AR 102–05, 107–11), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 112–13.) An administrative hearing was held on May 10, 2018. (AR 29–87.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as from an impartial vocational expert ("VE").[4] (*See* AR 29–87.)

As reflected in his September 14, 2018, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 1, 2016, through the date of decision. (AR 12–28.) The ALJ's decision became the final decision of the Commissioner on October 18, 2019, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) This timely civil action followed. (*See* ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff engaged in substantial gainful activity during the second quarter of 2016. (AR 17–18.)

---

[3]   The parties have expressly consented that all proceedings in this case may be heard and finally adjudicated by the undersigned magistrate judge. 28 U.S.C. § 646(c); Fed. R. Civ. P. 73; ECF No. 6.

[4]   At the hearing, Plaintiff initially requested to amend the alleged onset date of disability to one month earlier on April 1, 2016; however, he withdrew this amendment after the VE's testimony. (AR 15.)

Despite this, the ALJ found that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, and therefore, the ALJ proceeded with the sequential evaluation.  (AR 18–24.)

At step two, the ALJ found that Plaintiff had the following severe impairments: remote history of partial degloving injury to the right anterolateral ankle; right ankle osteoarthritis; right wrist carpal tunnel syndrome; and multilevel spine sprain and strain. (AR 18.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 18.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work," finding that:

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently; and can sit for six hours total in an eight-hour workday, for up to one hour at a time, with normal breaks; can stand and/or walk for six hours in an eight-hour workday, for up to one hour at a time, with normal breaks; can occasionally walk on uneven terrain; can occasionally kneel, crouch, and crawl; and can frequently handle and finger with the dominant right hand.

(AR 18.)  At step four, based on Plaintiff's RFC and while relying on the VE's testimony, the ALJ determined the Plaintiff could perform past relevant work as an occupational safety inspector.  (AR 23–24.)  Accordingly, without reaching step five, the ALJ found that Plaintiff was not disabled under the law from May 1, 2016, through the date of decision. (AR 24.)

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of*

*Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986).  Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence.  *Id.*

## IV.   PLAINTIFF'S CLAIMS OF ERROR

Plaintiff raises the following claims of error in his merits brief:

1.    The ALJ failed to set forth clear and convincing reasons for discrediting Plaintiff's symptom testimony.  (ECF No. 23 at 9–11.)[5]

2.    The ALJ failed to provide a sufficient basis for rejecting the medical opinions of treating physicians Dr. Marc Chodos, M.D., Dr. Brian Fitzgerald, M.D., and a third medical provider with an illegible signature (the "unknown medical provider") in assessing Plaintiff's RFC.  (ECF Nos. 23 at 6–9; 25 at 1–3.)

## V.   DISCUSSION

### A.   The ALJ's Credibility Determination

#### 1.   Parties' Arguments

First, the Court addresses Plaintiff's claim that the ALJ erred by failing to set forth clear and convincing reasons for discrediting his symptom testimony.  (ECF No. 23 at 9–11.)  Plaintiff argues "[t]he ALJ rejected [his] subjective complaints based upon isolated pieces of the record and failed to consider the context of [his] treatment records as a whole."

---

[5]    Plaintiff's merits brief includes a brief recitation of law related to an ALJ's duty to develop the record.  (ECF No. 23 at 9.)  Plaintiff includes no substantive argument in his brief that the ALJ erred in this manner.  The Court declines to address an issue not properly raised and articulated by Plaintiff.

(*Id.* at 11.)   In response, the Commissioner argues that the ALJ properly considered Plaintiff's subjective claims.   (ECF No. 24 at 8–11.)   The Court agrees with the Commissioner.

  2.  Plaintiff's Symptom Allegations

  a.  *Plaintiff's Symptom Testimony at the Administrative Hearing*

At the May 10, 2018, hearing before the ALJ, Plaintiff testified regarding his work history and symptoms.  (AR 29–87.)  Plaintiff testified that he "stopped working for the Local [Union] in the latter part of March [] 2016."  (AR 38–39.)  Plaintiff testified that he retired early after he was voted out of his position with the Union.  (AR 38–39, 42.)  Plaintiff testified that he worked as a business manager for the Union before he retired. (AR 42.)   Plaintiff testified that as a business manager, he would "go out and check jobsites."  (AR 42.)   Plaintiff testified that he was a "business agent" before he was the "business manager," but that the job duties were essentially the same.  (AR 43.)   Plaintiff testified that, in addition to checking jobsites every day, his duties up until 2016 as a business manager included "construction, administrative deliveries . . . walking up and down ladders, [walking on] uneven surfaces, [and] bringing materials to the rank and filed [sic] membership."  (AR 47, 49.)

When confronted with the conflict between this testimony about his work activities and what was reported on his original disability application, Plaintiff testified that he made an error when he only included "administrative duties" in his original disability application from 2016 because, at the time, he was "going through a lot."  (AR 46–47.)   Plaintiff testified that he suffered a traumatic foot injury when he was a teenager, and that his ankle hurt while he was still working for the Union.  (AR 50.)  Plaintiff testified that he continued to work because he "was so used to the pain and the swelling," that if he was able to elevate his foot for certain periods throughout the day, he "would be okay."  (AR 55.)  However, Plaintiff testified that he "stepped off a curb the wrong way" in March 2016 and had "sharp, stabbing pains," which led him "to go . . . see" his primary care physician.  (AR 55.) Plaintiff further testified that as soon as he gets up in the morning, he has "sharp pains in

[his] right foot," and shortly after, his foot begins to swell. (AR 72.) Plaintiff testified that he used a compression stocking "off and on for a good year, year-and-a-half" to deal with the swelling in his foot. (AR 71.) Plaintiff testified that after he walks, he has to "go lay down . . . to elevate [his] foot." (AR 73.)

Plaintiff testified that he became addicted to morphine as a teenager after the accident that caused his ankle injury. (AR 51.) As a result, Plaintiff testified that he does not take opiates, but takes over-the-counter medication for his pain every day. (AR 77.)

Plaintiff also testified that he "had carpal tunnel syndrome off and on for years" and that he started wearing a brace on his right wrist about two years ago. (AR 68–70.) Plaintiff further testified that he wore the brace mostly at night, but wore it "[f]rom time to time . . . during the day." (AR 70.) Plaintiff testified that he could not "tie [his] shoelace . . ." and that "[b]rushing [his] teeth [wa]s difficult" due to the pain his right wrist. (AR 70.)

    b.  *Reconciling Conflicts in Plaintiff's Symptom Testimony*

In his merits brief, Plaintiff argues that "[a]t the hearing, [he] could barely testify without the ALJ interjecting his own thoughts." (ECF No. 23 at 11.) A review of the hearing transcript, however, reveals that the ALJ was attempting to reconcile conflicts in Plaintiff's testimony and seek clarification from Plaintiff on a number of issues that seemed, on their face, to be contradictory or otherwise difficult to reconcile, such as:

- Plaintiff testified that his onset of disability coincided with his last day of work although he also acknowledged that he left work involuntarily due to being voted out of the Union leadership position he had tried to keep. (AR 36, 40–42.)

- Plaintiff attempted to amend his alleged onset date of May 1, 2016, to one month earlier, on April 1, 2016. (AR 33–37.) Plaintiff testified that he stopped working at the end of March 2016, even though he received additional payment of $9,696 for one month after he ceased working. (AR 37, 271.) Plaintiff claimed that the additional payment was for severance pay, and not work activity. (AR 36.) As he was unable to document the nature of the payments, Plaintiff withdrew his motion to amend and kept his onset date of May 1, 2016. (AR 86.)

19-cv-02431-JLB

- Plaintiff testified that his last two positions at the Union entailed visiting construction sites almost every day where he walked on uneven terrain, carried supplies and equipment, loaded and unloaded trucks, climbed ladders, climbed on roofs, and climbed down into pits, even though when he completed his disability application within weeks of leaving the position, he stated the position had consisted only of administrative duties with no lifting or carrying, no use of machines, tools or equipment, walking only 10% of the time and standing only 10% of the time. (AR 42–49, 54, 235–237.)

- Plaintiff testified that doctors he had seen during the disability period had recommended opiates, but he was unable to identify doctors from that period who had noted any such recommendation in their treatment notes. (AR 51–53.)

- Plaintiff received a six-month note for disability from the day he stopped working, but the doctor who issued the note at the first visit conducted no physical exam, did no imaging, prescribed no medication, and made no referral for physical therapy. (AR 52.)

- When Plaintiff first stopped working and saw a doctor on April 20, 2016, he was 52 years old and reported that he had "pain all of the time which [wa]s new since his 50's," (AR 305)—which would have included the time when he was still working— yet he did not see a doctor until he stopped working. (AR 50, 54–55.)

- Plaintiff complained of disabling pain, but he did not avail himself of many of the conservative, non-operative therapies suggested by his physician, such as a cast or boot, an ankle brace, high top shoes to restrict side-to-side motion; conversely, Plaintiff wore flip-flops to doctor appointments. (AR 56–62.)

- Plaintiff testified that he had been wearing his wrist brace regularly at night for about a year and a half, but at a doctor appointment six months earlier he stated he had just started wearing the brace a couple of weeks earlier. (AR 66–68.)

///

Although the colloquy between the ALJ and Plaintiff was very active and engaged in light of the foregoing, and although each sometimes spoke over the other, contrary to Plaintiff's assertion, Plaintiff was able to fully testify at the administrative hearing.

        c.    *Plaintiff's Symptom Testimony from His Disability Reports and Medical Records*

Plaintiff has an ankle injury that caused him to stop working.  (AR 215.)  Plaintiff has lower back pain and elbow pain associated with his ankle injury.  (AR 239.)  In addition, Plaintiff's ankle injury "limited [his] ability to walk, run, squat[, and] sit."  (AR 241.)  Plaintiff also has "difficulty in lifting anything," which has caused him "lower back pain and arm issues . . . on a daily basis."  (AR 241.)  Plaintiff complains that his right ankle is very sensitive to touch and keeps him in constant pain.  (AR 293.)  At times, Plaintiff "can barely put weight on" his right ankle, which is severely scarred.  (AR 294, 306, 320.)  On a scale of 1 to 10, Plaintiff rates his pain level as a 10 and his disability level as a 9.  (AR 328.)  Plaintiff has at times used a cane.  (AR 328, 330, 341.)

Plaintiff also suffers from worsening right elbow pain and carpal tunnel syndrome in his right hand.  (AR 417.)  Due to his carpal tunnel syndrome, Plaintiff has symptoms of "weakness, loss of dexterity[,] and numbness."  (AR 417.)  Plaintiff has worn braces for his right elbow pain and his carpal tunnel syndrome.  (AR 417.)  Plaintiff's "[p]ain radiates all the way up [his] arm."  (AR 596.)  To control this pain, he takes over-the-counter medications, such as ibuprofen.  (AR 596.)

    3.   <u>Legal Standard</u>

In determining whether a claimant is disabled, the ALJ must consider all of the claimant's symptoms, including the claimant's "statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work."  20 C.F.R. § 404.1529(a).  The Ninth Circuit has established a two-part test "to determine whether a claimant's testimony regarding subjective pain or

symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted). If the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear[,] and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

In weighing the credibility of the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* at 1284. The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999)).

General findings, however, are insufficient; the ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *accord Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) ("To support a lack of credibility finding, the ALJ [is] required to point to specific facts in the record."); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."). The

ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas*, 278 F.3d at 958.

4.   Discussion

The ALJ began his credibility determination with the following boilerplate language:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.

(AR 18.)   The ALJ then detailed the two-step process used to consider a claimant's symptoms and summarized Plaintiff's subjective symptom complaints:

> The claimant alleges that an ankle injury prevents him from working.  [AR 214–22.]  His documented subjective complaints include constant right foot pain, sensitivity to touch, swelling, instability, and stiffness; at times having difficulty putting weight on the right foot; and intermittently needing to walk with a cane.  He also reported painful right elbow, weakness and decreased grip strength in the right wrist, loss of dexterity, and numbness.  [AR 277–95, 328, 341, 363, 669.]

(AR 19.)  Because the ALJ determined that Plaintiff's medically determinable impairments could be expected to cause his alleged symptoms and did not find Plaintiff to be malingering, the issue before the Court is whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms.

Here, the ALJ summarized the medical evidence provided by Dr. Chodos, Dr. Mia Hosaka, D.O, Dr. Thomas J. Sabourin, M.D., Dr. George G. Spellman, Jr., M.D., Dr. Pamela Ombres, M.D., and Dr. Fitzgerald.  (AR 19–23.)  The ALJ cited some medical evidence that corroborated Plaintiff's testimony regarding his pain and limitations, but also cited medical evidence the ALJ could reasonably conclude went against Plaintiff claims concerning "the intensity, persistence and limiting effects of [Plaintiff's] symptoms" and other evidence that undermined Plaintiff's complaints.  (AR 20–23.)  The ALJ discounted

Plaintiff's subjective allegations of disability by relying on the objective medical evidence, Plaintiff's lack of consistent treatment, and Plaintiff's daily activities.  (AR 20–21.)

　　　　a.　　*Objective Medical Evidence*

In assessing Plaintiff's RFC, the ALJ addressed Plaintiff's objective medical history as follows:

> The record documents the claimant's remote history of partial degloving injury to the right anterolateral ankle at age 16, and of more recent right ankle osteoarthritis, right wrist [carpal tunnel syndrome], and multilevel spine sprain and strain.  The claimant reported by history that he was in a motor vehicle accident at age 16 and required multiple surgeries, including a split thickness skin graft.  [AR 289, 328, 384.]  September 2016 x-rays of the right foot showed moderate degenerative disease at the ankle and subtalar joints, mild degenerative disease of the great toe metatarsophalangeal joint, and calcaneal enthesophytes.  [AR 331, 334, 613–14.]  An October 2017 electromyogram (EMG)/nerve conduction study (NCS) showed moderate to severe right [carpal tunnel syndrome].  [AR 642.]

> Since the alleged onset date, the record mentions right foot swollen on the medial side; extensive scarring of the lateral hindfoot from the anterior to the posterior hindfoot and extending up the anterolateral ankle; generally altered or decreased sensation compared to the other side, with hypersensitivity to even light touch around the ankle, worse laterally and anteriorly, with pain with ankle motion; 95% decreased hindfoot motion; decreased motion in the midfoot; limp favoring the right ankle when he used a cane, with slight varus alignment; inability to toe walk on the right; and decreased sensation over the graft on the right lateral ankle and just distal to the graft.  The record also notes some findings of generalized tenderness on the right side of the neck, decreased cervical and lumbar ranges of motion, generalized tenderness in both shoulders (right greater than left), positive Tinel's sign at the wrist crease, and positive Phalen's test at 30 seconds.  [AR 294, 330, 384–98, 610, 654, 721.]

> Objective findings on clinical examination were generally within normal limits . . . including warm feet with normal pulses, good capillary refill and Achilles reflexes, and normal monofilament exam.  The claimant had no spasm; negative axial load testing; full and painless cervical spine range of motion; negative Spurling's test; no deformity, swelling, or heat in the back; negative straight leg raise in the supine and sitting positions; normal Trendelenburg test; full range of motion in both shoulders with satisfactory

strength; negative Tinel's and Phalen's tests; normal thenar muscles with no atrophy; no objectively decreased sensation; full ranges of motion in the wrists bilaterally; and normal motor strength throughout the upper and lower extremities bilaterally. He was able to heel walk bilaterally and toe walk on the left, had no difficulty getting in and out of a chair or on and off the exam table independently, and could sit on the examination table with his legs straight out in front of him without apparent pain. [AR 371, 384–98, 654, 670.]

(AR 19–20.)

Although an ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in his evaluation, the ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence." *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

In this case, the ALJ referred to objective medical evidence in the record to demonstrate that the evidence generally showed normal or only mild findings. Substantial evidence is not a high bar. *See Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) ("Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). After considering the record as a whole and evaluating both the evidence that supports and detracts from the Commissioner's conclusion, (*see Desrosiers*, 846 F.2d at 576), the Court finds that substantial evidence in the record supports the ALJ's finding that Plaintiff's subjective complaints were not fully supported by the objective medical evidence in the record. But because an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (*see Robbins*, 466 F.3d at 883), this reason in and of itself is not a sufficient basis for the ALJ's adverse credibility finding. The ALJ was thus required

19-cv-02431-JLB

to articulate at least one other clear and convincing reason to discount Plaintiff's pain testimony.

### b.   *Lack of Consistent Treatment*

An "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).   Although Plaintiff reported experiencing "constant pain since his 50's," he had provided no records of treatment before April 2016—the month he stopped working and a month before his alleged disability onset date.   (AR 21, 281.)   ALJs are encouraged to consider "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms."   20 C.F.R. § 404.1529(c)(3)(v).   That a claimant's pain was "not severe enough to motivate [him or] her to seek [certain] forms of treatment, even if [he or] she sought some treatment, is powerful evidence regarding the extent to which [he or] she was in pain."   *Burch*, 400 F.3d at 681 (internal citation and internal quotation marks omitted) (upholding ALJ's finding because claimant did not receive surgery, chiropractic services, nor physical therapy for three to four months).

Here, the ALJ noted that Plaintiff "generally did not take any prescription medications, including pain medication, suggesting that his symptoms were not so severe as to require such treatment."   (AR 20.)   The ALJ also referenced Dr. Chodos's suggestions for "nonoperative treatment for the right ankle, such as temporary immobilization, an ankle brace, or a high-top shoe or boot; non-narcotic topical or oral medications or a spinal-cord simulator trial to decrease pain; and the possibility of surgical treatment," and noted that Plaintiff "did not exhaust all alternative treatment options, such as physical therapy, and frequently wore flip-flops, which provide no ankle support, to appointments rather than supportive footwear as recommended."   (AR 20–21.)   Further, the ALJ cited Dr. Sabourin's observations "that though [Plaintiff] reported using his cane for two years, he used it clumsily, seemingly inconsistent with regular use, and it '[did] not look very well used.'" (AR 21.)   With respect to carpal tunnel syndrome, the ALJ noted that treating records show Plaintiff did not wear his brace consistently.   (AR 21.)   "Nevertheless, he denied symptoms

at a March 2017 consultative examination and stated that bracing 'essentially cured him' on the left side' . . . [and] [t]reating records also note the claimant reported significant relief from corticosteroid injection to his right hand." (AR 21.) In addition, the ALJ noted "some inconsistencies in the claimant's overall subjective reporting, including regarding his past work and regarding his compliance with treatment, such as regarding use of a carpal tunnel brace." (AR 21.)

The Court finds that Plaintiff's lack of consistent treatment, especially in conjunction with inconsistencies in Plaintiff's overall subjective reporting, was a specific, clear, and convincing reason for the ALJ to discredit Plaintiff's subjective symptom complaints.

### c.    *Daily Activities*

In considering Plaintiff's testimony regarding his daily living, the ALJ explained that "despite his subjective symptoms and difficulties, the [Plaintiff] retained much functioning." (AR 20.) The ALJ noted:

> [Plaintiff] testified he started using a carpal tunnel brace around two years before the hearing but only wears it at night. Treating records note he was able to exercise 120 to 210 minutes per week at a moderate to strenuous level. [AR 29–87, 372, 459, 599.] The undersigned also observed that he was able to travel and attend the hearing wearing a below-the-ankle athletic shoe, which provided no lateral support for his ankle, despite doctor recommended bracing or appropriate footwear to support his ankle.

(AR 20.) The Ninth Circuit has repeatedly held that "[a] claimant 'does not need to be utterly incapacitated in order to be disabled.'" *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)); *Garrison*, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

Here, the Court finds that the daily activities listed by the ALJ are not necessarily demonstrative of Plaintiff's ability to rejoin the work force. For example, there is nothing in the record as to what constitutes Plaintiff's "moderate to strenuous" weekly exercise, so

the Court cannot conclude that Plaintiff "spend[s] a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (internal quotation and citation omitted).   Moreover, the Court finds that the ALJ failed to identify whether portions of Plaintiff's testimony were inconsistent with his activities of daily living, or if the testimony was inconsistent because it demonstrated a functional capacity that would allow him to work.   (*See* AR 20.)   The ALJ is required to "specifically identify the testimony . . . he finds not to be credible and . . . explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).   Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based on the evidence of Plaintiff's daily activities, or why.

For these reasons, the Court finds that the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's pain and symptom testimony when he failed to explain how the identified daily activities either contradicted Plaintiff's testimony or equaled transferable work skills.   However, the Court finds that this is harmless error because, as addressed above, the ALJ provided other, adequately supported, bases for discrediting Plaintiff.   *See Batson*, 359 F.3d at 1195–97 (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (holding two invalid reasons for an adverse credibility finding were harmless error in light of the remaining reasoning).

In sum, this Court finds more than one of the ALJ's reasons for his adverse credibility determination sufficient.   The ALJ discussed Plaintiff's subjective symptom statements, reviewed the record, and addressed which parts of the record undermined Plaintiff's statements. (AR 19–21.)   The ALJ did not make "general findings," *Ghamin*, 763 F.3d at 1163, but rather specifically showed why he came to his determination by making findings based on the record.   (AR 21.)   As a result, the ALJ has met his

1    requirement for providing "specific, clear[,] and convincing reasons" for making an

2    adverse credibility determination for Plaintiff's testimony.  *Lingenfelter*, 504 F.3d at 1036.

3    **B.    The ALJ's Rejection of Plaintiff's Treating Physicians' Opinions**

4    　　　　1.    Parties' Arguments

5    　　　　Next, Plaintiff argues the ALJ improperly rejected the medical opinions of three

6    treating physicians—Dr. Chodos, Dr. Fitzgerald, and the unknown medical provider—

7    regarding Plaintiff's RFC limitations without providing any "specific, legitimate reason."

8    (ECF No. 23 at 6.)  Specifically, Plaintiff argues the ALJ committed harmful error by

9    failing to properly consider the unknown medical provider's opinion "that Plaintiff could

10   lift and carry ten pounds frequently and occasionally, would need a medically necessary

11   handheld device for ambulation, must periodically alternate sitting and standing, and is

12   limited in both the upper and lower extremities."  (*Id.* at 7.)  Plaintiff also argues the ALJ

13   committed harmful error by rejecting Dr. Chodos's opinion that Plaintiff "needs sedentary

14   work" and that "Plaintiff could occasionally lift up to ten pounds[,] could sit for up to one

15   hour for less than four hours[,] and stand and[/]or walk up to an hour at a time for less than

16   four hours."  (*Id.*)  Finally, Plaintiff argues the ALJ improperly rejected Dr. Fitzgerald's

17   opinion that "Plaintiff's post-traumatic arthritis right subtalar/ankle joints cause significant

18   limitations."  (*Id.*)  The Commissioner argues the ALJ's RFC finding was proper because

19   the ALJ synthesized the weight of the evidence and supported his decision with substantial

20   evidence.  (ECF No. 24 at 9.)  The Court agrees with the Commissioner.

21   　　　　2.    Legal Standards

22   　　　　　　a.    *The ALJ's Consideration of Medical Opinion Evidence*

23   　　　　For claims filed before March 27, 2017, such as Plaintiff's claim, the ALJ follows

24   specified rules to evaluate medical opinion evidence.  20 C.F.R. § 404.1527.  "The ALJ

25   must consider all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

26   (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  Medical opinions "are statements from

27   acceptable medical sources that reflect judgment about the nature and severity of [a

28   claimant's] impairment(s)" and are considered by the ALJ together "with the rest of the

19-cv-02431-JLB

relevant evidence receive" in determining if a claimant is disabled.   20 C.F.R. § 404.1527(a)(1), (b).  Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1502.

A treating physician's opinion is generally given more weight than that of a physician who did not treat the claimant.  20 C.F.R. § 404.1527(c)(2).  Similarly, an examining physician's opinion is given more weight than the opinion of a nonexamining physician.  20 C.F.R. § 404.1527(c)(1); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830).  "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  *Ryan*, 528 F.3d at 1198 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester*, 81 F.3d at 830–31).  The ALJ can meet the "specific and legitimate reasons" burden "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation therefor, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Opinions on some issues are "reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d).  Opinions on issues reserved to the Commissioner include whether a claimant is disabled, whether a claimant is unable to work, and the claimant's RFC.  20 C.F.R. § 404.1527(d)(1), (2).  Opinions on issues reserved to the Commissioner made by physicians, including treating physicians, are not considered medical opinions and ALJs will "not give any special significance to the source of [such] opinion."  20 C.F.R. § 404.1527(d)(1), (3).  However, if the treating or

examining physician's opinion on the ultimate issue of disability is uncontradicted, the ALJ cannot reject it without providing clear and convincing reasons.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). And if such an opinion *is* contradicted by the opinion of another physician, the ALJ must set forth specific and legitimate reasons to properly reject it.  *See Ghanim*, 763 F.3d at 1161; *Hill*, 698 F.3d at 1160.

The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)–(6) in determining how much weight to afford the treating physician's medical opinion. *Ghanim*, 763 F.3d at 1161.  Those factors include:

> [T]he length of the treatment relationship and the frequency of examination by the treating physician; []the nature and extent of the treatment relationship between the patient and the treating physician[;] . . . the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; . . . the degree of understanding a physician has of the Administration's disability programs and their evidentiary requirements[;] and the degree of his or her familiarity with other information in the case record.

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(d)(1)–(6).  The failure to consider these factors constitutes reversible legal error.  *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

However, "courts in our district have held that *Trevizo* does not 'demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them.'"  *Kovach v. Berryhill*, No. 18-cv-01848-GPC-MSB, 2019 WL 2995824, at *12 (S.D. Cal. July 9, 2019) (quoting *Hoffman v. Berryhill*, No. 16-cv-01976-JM-AGS, 2017 WL 3641881, at *1, *4 (S.D. Cal. Aug. 24, 2017)) report and recommendation adopted by 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017) (citing *Yantos v. Berryhill*, No. 15-cv-02733-JAH-BGS, 2018 WL 899126, at *1, *6 (S.D. Cal. Feb. 14, 2018) ("[T]he Ninth Circuit has never compelled such a specific analysis.  The ALJ is

certainly required to consider all of the factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in an ALJ's decision.")).

### b. *The ALJ's Assessment of Plaintiff's RFC*

The RFC is used at step four to decide if a claimant can do past relevant work. 20 C.F.R. § 404.1545(5)(i). A claimant's RFC "is the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.") The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. § 404.1546(c). The ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the plaintiff and other non-medical sources. 20 C.F.R. § 404.1545(3); *Laborin*, 867 F.3d at 1153.

### 3. Discussion

Before step four of the Commissioner's five-step sequential evaluation process, the ALJ determined Plaintiff has the RFC to "perform light work," such that he can:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently; and can sit for six hours total in an eight-hour workday, for up to one hour at a time, with normal breaks; can stand and/or walk for six hours in an eight-hour workday, for up to one hour at a time, with normal breaks; can occasionally walk on uneven terrain; can occasionally kneel, crouch, and crawl; and can frequently handle and finger with the dominant right hand.

(AR 18.)

Relevant to Plaintiff's argument is the unknown medical provider's medical opinion from November 10, 2016, Dr. Chodos's medical opinion from April 9, 2018, and Dr. Fitzgerald's medical opinion from April 16, 2018. (ECF No. 23 at 7–8; AR 297, 660–65.)

On November 10, 2016, the unknown medical provider opined regarding Plaintiff's "elbow pain" and the "severe pain" in his ankle. (AR 297, 303.) The unknown medical provider stated that Plaintiff "lives w[ith] daily pain" and that his limitations due to his ankle and carpal tunnel syndrome "prevent duties in excess of" occasionally or frequently lifting and/or carrying less than 10 pounds, standing and/or walking with a medically required hand-held assistive device, and periodically alternating between sitting and standing to relieve pain or discomfort. (AR 297, 303.) The unknown medical provider also reported that Plaintiff was limited in both his upper and lower extremities. (AR 297, 303.)

On April 9, 2018, Dr. Chodos opined only in regard to Plaintiff's "right foot/ankle." (AR 660.) Dr. Chodos noted that Plaintiff would need a "sedentary type job." (AR 660.) Dr. Chodos opined that it was necessary for Plaintiff to elevate his legs during the course of the day because he had "extensive post-traumatic scarring leading to poor . . . lymphatic drainage." (AR 661.) Dr. Chodos stated that based on his discussion with Plaintiff, Plaintiff had been functioning with pain in his right foot/ankle since approximately April 1, 2016. (AR 662.) Dr. Chodos stated that although he first saw Plaintiff as a patient on September 9, 2016, he believed Plaintiff's pain "was already a chronic problem at that point." (AR 662.)

On April 16, 2018, Dr. Fitzgerald opined only regarding Plaintiff's "right hand/arm." (AR 663.) Dr. Fitzgerald noted that Plaintiff had right carpal tunnel syndrome. (AR 663.) Dr. Fitzgerald opined that Plaintiff could lift up to 10 pounds occasionally and had restrictions on handling because it caused him pain. (AR 663–64.)

As outlined above, the ALJ summarized the medical evidence from the examinations and treatments of Plaintiff from 2016 through 2018 by treating physicians Dr. Chodos, Dr. Fitzgerald, and the unknown medical provider. (AR 20–23.) The ALJ stated the following regarding the opinions of Dr. Chodos and Dr. Fitzgerald:

Orthopedic hand surgery specialist Brian Fitzgerald, M.D., opined based only on the claimant's right upper extremity that he was limited to lifting and/or

carrying 10 pounds occasionally, and he had no restrictions on reaching; however[,] he had undefined restrictions handling or fingering with the right hand, due to symptoms of pain and increased numbness to fingers with these activities. [AR 663–65.] Dr. Chodos opined the claimant needed a sedentary-type job and was limited to lifting and/or carrying 10 pounds; sitting up to one hour at a time and less than four cumulative hours in a workday; standing up to one hour at a time and less than four cumulative hours in a workday; walking up to one hour at a time and less than four cumulative hours in a workday; alternating positions between sitting, standing, and walking as needed; and needing to be able to elevate his foot intermittently.  [AR 660–62, 724–25.]  These opinions are afforded less weight, however, because the greater limitations outlined appear to be based on the claimant's subjective symptoms rather than objective medical findings, particularly given normal findings such as intact motor strength in the upper and lower extremities and infrequent mention of swelling; and these greater limitations may reflect exacerbated symptoms due to the claimant's documented noncompliance with medical recommendations, as previously mentioned, especially given that he testified that he could previously work despite pain when following Dr. Chodos'[s] suggestion of wearing supportive footwear.  The undersigned notes that Dr. Fitzgerald did not provide specific functional limitations regarding handling or fingering; however, his opinion is afforded some weight to the extent that it is consistent with the documented findings related to right [carpal tunnel syndrome] and the right upper extremity limitations describes in the residual functional capacity.

(AR 22–23.)  As to the treating opinion from the unknown medical provider, the ALJ stated:

An individual with an illegible signature opined in November 2016 that the claimant was limited to lifting and/or carrying less than 10 pounds occasionally and frequently; ambulating with a medically required handheld assistive device; periodically alternating sitting and standing to relieve pain or discomfort; limitations in the upper and lower extremities; never climbing, balancing, stooping, kneeling, crouching, or crawling; limited reaching in all directions, handling, fingering, and feeling; limited near acuity, far acuity, depth perception, accommodation, and field of vision; avoiding concentrated exposure to wetness and pulmonary irritants; avoiding even moderate exposure to humidity; and avoiding all exposure to extreme cold, extreme heat, vibration, and hazards.  [AR 296–303.]  This opinion is considered in accordance with 20 CFR 404.1527; however, it is afforded little weight overall because the extreme limitations outlined appear to be based on the

claimant's subjective complaints and are inconsistent with the above-discussed objective findings, including generally full motor strength in all extremities and no neurological abnormalities. The undersigned notes that this opinion essentially describes inability to perform postural activities, including stooping, which is clearly inconsistent with the claimant's capabilities, including the ability to sit at the hearing.[6]

(AR 23.)

In addition, the ALJ stated the following regarding the opinions provided by State agency medical consultants, Dr. Spellman and Dr. Ombres, as well as the opinion provided by consultative examiner, Dr. Sabourin:

In August and October 2016, State agency medical consultants G. Spellman, M.D., and P. Ombres, M.D., opined the claimant had no severe persisting physical impairment. [AR 89–94, 96–101.] These opinions are generally consistent with the above-discussed largely normal findings and the claimant's overall minimal treatment and noncompliance with medical recommendations; however, the undersigned gives greater consideration to the abnormal findings above, including decreased right ankle range of motion and EMG findings consistent with right [carpal tunnel syndrome], in finding the above severe impairments and modified light residual functional capacity.

Consultative examiner Dr. Sabourin opined in narrative that the claimant could essentially perform light work, except he was limited to occasionally walking on uneven terrain, due to his subtalar joint decreased range of motion; and occasionally climbing, kneeling, and crouching. He did not need a cane to ambulate on a routine basis. Dr. Sabourin noted additional limitations in a checkbox form, including frequently operating foot controls with the right foot; occasionally climbing and crouching; frequently balancing and crawling; never tolerating exposure to unprotected heights; and frequently tolerating exposure to moving mechanical parts, extreme cold, extreme heat, and vibrations. [AR 384–98.] Dr. Sabourin's narrative opinion is based on and generally consistent with a thorough in-person examination of the claimant, including findings of some gait abnormalities and limited cervical

---

[6]    About this last point, Plaintiff notes that "[t]he ALJ provides no basis for this [conclusion that sitting at the hearing is inconstant with the inability to stoop] and cites nothing in the record. (ECF No. 23 at 9.) The Court agrees but finds that the ALJ otherwise provides specific and legitimate reasons for rejecting this medical opinion.

and lumbar ranges of motion, and is generally afforded great weight. Where the checkbox form differs from Dr. Sabourin's narrative opinion, however, the undersigned gives greater weight to the limitations given in narrative, as they are more likely to accurately reflect Dr. Sabourin's opinion. Moreover, the claimant's testimony regarding his ability to do his prior work when wearing supportive footwear and overall little treatment and noncompliance with medical recommendations is more consistent with Dr. Sabourin's narrative opinion. The undersigned, however, additionally considers the above-discussed objective evidence of [carpal tunnel syndrome] in finding additional handling and fingering limitations in the right upper extremity as described in the [RFC].

(AR 22.)  In this case, all three treating physicians' opinions are contrary to the opinions of the nonexamining State agency medical consultants, Dr. Spellman and Dr. Ombres, and consultative examiner, Dr. Sabourin. (*See* AR 68–72.)  Neither party disputes that Plaintiff's treating physicians' opinions are contradicted. Although the opinion of non-treating physicians cannot "constitute substantial evidence sufficient for rejecting [a treating physician's] opinion," it is sufficient to "establish a conflict among the medical opinions." *Widmark v. Barnhart*, 454 F.3d 1063, 1066–67 n. 2 (9th Cir. 2006) (citing *Lester*, 81 F.3d at 831).  Accordingly, the ALJ needed to give only specific and legitimate reasons for rejecting the opinions of the unknown medical provider, Dr. Chodos, and Dr. Fitzgerald.

### a.   *The Unknown Medical Provider*

The Court first addresses the unknown medical provider's opinion. The ALJ gave little weight to the unknown medical provider's opinion because "the extreme limitations outlined appear[ed] to be based on the [Plaintiff's] subjective complaints and [we]re inconsistent with the . . . objective findings. . . ."  (AR 23.)

The ALJ found that the unknown medical provider's opinion was not based on objective medical findings, but rather, Plaintiff's subjective complaints. (AR 23.)  This is a specific and legitimate reason to reject the unknown medical provider's opinion. *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

incredible"). The Court's review of the unknown medical provider's opinion confirms this finding because it appears to be based solely on Plaintiff's self-reported symptoms regarding his "daily pain." (AR 297.) As Plaintiff's credibility was reasonably discounted above, the ALJ properly assigned little weight to the unknown medical provider's opinion because it was based primarily on Plaintiff's subjective symptom complaints.

Moreover, the ALJ gave little weight to the unknown medical provider's opinion because it was unsupported by the medical record as a whole. (AR 23.) This is a specific and legitimate reason for rejecting the unknown medical provider's medical opinion testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may properly reject a physician's opinion that is conclusory and unsupported by objective medical findings); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (the ALJ may reject physician reports that do not contain any explanation of the bases of their conclusions); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

As noted by the ALJ in his decision, Plaintiff had "generally full motor strength in all extremities and no neurological abnormalities." (AR 23.) This is supported by the medical record. (AR 371, 384–98, 654, 670.) For example, Plaintiff had "no severe persisting impairment" (AR 91), had no need for a hand-held assistive device (AR 391), had normal motor strength throughout the upper and lower extremities bilaterally (AR 388), and "was able to heel walk bilaterally and toe walk on the left, had no difficulty getting in and out of a chair or on and off the exam table independently, and could sit on the examination table with his legs straight out in front of him without apparent pain" (AR 20, 386). The ALJ could reasonably conclude that these records conflicted with and undermined the unknown medical provider's opinion.

In sum, the Court finds that the ALJ provided specific and legitimate reasons for giving the unknown medical provider's opinion little weight.

///

19-cv-02431-JLB

1

            b.    *Dr. Chodos*

2        Next, the ALJ assigned "less weight" to Dr. Chodos's opinion "because the greater

3    limitations outlined appear[ed] to be based on the [Plaintiff's] subjective symptoms rather

4    than objective medical findings. . . ." (AR 22.)

5        Here, Dr. Chodos's opinion was provided on a check-the-box and fill-in-the-blank

6    form and was not accompanied by any objective findings or results of examination. (*See*

7    AR 660–62.) The Court finds that it was rational for the ALJ to conclude that Dr. Chodos's

8    opinion was primarily based on Plaintiff's subjective complaints. For example, in response

9    to one question on the form, Dr. Chodos noted that his answer was "[b]ased on his

10   discussion with" Plaintiff. (AR 662.) As discussed above, it is a specific and legitimate

11   reason to reject a treating physician's opinion that is largely based on a claimant's self-

12   reports. *Tommasetti*, 533 F.3d at 1041. Because Plaintiff's credibility was reasonably

13   discounted, the ALJ properly attached less weight to Dr. Chodos's opinion because it was

14   based primarily on Plaintiff's subjective symptom complaints.

15       The ALJ also noted Plaintiff's noncompliance with "medical recommendations."

16   (AR 22.) A "[p]laintiff's noncompliance with h[is] treatment regimen is a specific and

17   legitimate reason for rejecting [a treating physician's] conclusions." *Wright v. Berryhill*,

18   No. 16-cv-06203-DFM, 2018 WL 278618, at *4 (C.D. Cal. Jan. 3, 2018) (citing *Swinscoe*

19   *v. Astrue*, No. 10-cv-01614-BAM, 2012 WL 2317550, at *6 (E.D. Cal. June 18, 2012); *see*

20   *also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

21   ("Impairments that can be controlled effectively with medication are not disabling for the

22   purpose of determining eligibility for [disability] benefits."). Here, the record reflects that

23   Plaintiff did not follow Dr. Chodos's suggestions for non-operative, conservative

24   treatment, such as wearing more supportive footwear. (AR 611, 721–22.) Moreover, as

25   the ALJ noted in his opinion, Plaintiff "testified that he could previously work despite pain

26   when following Dr. Chodos'[s] suggestion of wearing supportive footwear." (AR 23, 74–

27   76.) As such, the Court finds the ALJ adequately met his burden to articulate "specific and

28   legitimate reasons" for assigning less weight to Dr. Chodos's opinion that limited Plaintiff

to "sedentary work" and precluded him from lifting over 10 pounds. *Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020); AR 22.

### c.   *Dr. Fitzgerald*

Finally, as with Dr. Chodos's opinion, the ALJ assigned "less weight" to Dr. Fitzgerald's opinion "because the greater limitations outlined appear[ed] to be based on the [Plaintiff's] subjective symptoms rather than objective medical findings . . . and [because the] greater limitations may reflect exacerbated symptoms due to [Plaintiff's] documented noncompliance with medical recommendations. . . ." (AR 22.)  The ALJ did afford "some weight" to Dr. Fitzgerald's opinion to the extent that it was "consistent with the documented findings related to right [carpal tunnel syndrome] and the right upper extremity limitations described in the [RFC]." (AR 22.)

Here, again like Dr. Chodos's opinion, Dr. Fitzgerald's opinion was provided on a check-the-box and fill-in-the-blank form. (*See* AR 663–65.)  Although Dr. Fitzgerald's opinion limited Plaintiff "to lifting and/or carrying 10 pounds *occasionally*" (AR 663, emphasis added), the Court finds that the ALJ properly rejected this finding because it was not accompanied by any objective findings, explanation, or results of examination.  Instead, the Court agrees with the ALJ that Dr. Fitzgerald's findings appear to be based only on Plaintiff's subjective symptom statements. (*See* AR 663–64.)  It is a specific and legitimate reason to reject a treating physician's opinion that is largely based on a claimant's self-reports. *Tommasetti*, 533 F.3d at 1041.  Because Plaintiff's credibility was reasonably discounted, the ALJ properly attached less weight to Dr. Fitzgerald's opinion because it was based primarily on Plaintiff's subjective symptom complaints.

The Court also finds that the ALJ reasonably concluded that Dr. Fitzgerald's greater limitations appear to be based on "exacerbated symptoms due to [Plaintiff's] documented noncompliance with medical recommendations. . . ." (AR 22.)  The ALJ noted Plaintiff's noncompliance with recommended treatment in his decision, including Plaintiff's inconsistent use of a carpal tunnel brace. (AR 21.)  As stated above, Plaintiff's noncompliance with his treatment is a specific and legitimate reason for rejecting Dr.

Fitzgerald's conclusions. *See* 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *Owen v. Astrue*, 551 F.3d 792 (8th Cir.2008) (concluding that ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give [doctor's] medical opinions"); *Orn*, 495 F.3d at 638 (stating "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"). Therefore, the Court finds the ALJ adequately articulated "specific and legitimate reasons" for assigning only "some weight" to Dr. Fitzgerald's opinion. *Coleman*, 979 F.3d at 757; AR 22.

In sum, when assessing Plaintiff's RFC, the ALJ considered Plaintiff's allegations of his symptoms and limitations as well as the third-party statement of Plaintiff's friend, Shihong Ma. (AR 19, 23.) The ALJ summarized the medical and opinion evidence provided by Dr. Chodos, Dr. Fitzgerald, Dr. Hosaka, Dr. Sabourin, Dr. Spellman, and Dr. Ombres. (AR 20–23.) The ALJ also properly considered and weighed the medical opinions of Dr. Chodos, Dr. Fitzgerald, the unknown medical provider, and Dr. Sabourin. (AR 22–23.) Finally, the ALJ noted his own observations, such as Plaintiff being "able to travel and attend the hearing wearing a below-the-ankle athletic shoe, which provided no lateral support for his ankle, despite doctor recommended bracing or appropriate footwear to support his ankle." (AR 20.) Contrary to Plaintiff's assertion that the ALJ "cherry pick[ed]" evidence from the record, the Court finds that the ALJ properly determined Plaintiff's RFC by considering "all of the relevant medical and other evidence" as well as "any statements about what [Plaintiff] can still do that have been provided by medical sources" and "descriptions and observations of [Plaintiff's] limitations" provided by Plaintiff and other non-medical sources. 20 C.F.R. § 404.1545(3); *Laborin*, 867 F.3d at 1153. As such, the ALJ did not error in assessing Plaintiff's RFC. Any conflicts or ambiguities in the record were properly resolved by the ALJ. *See Ryan*, 528 F.3d at 1198

(holding that if the evidence is susceptible to multiple rational interpretations, the ALJ's decision should be upheld).

## VI.   <u>CONCLUSION</u>

The ALJ's decision was supported by substantial evidence and was based on proper legal standards.   Accordingly, for the reasons discussed above, the Court **DENIES** Plaintiff's merits brief and directs the Clerk to enter Judgment affirming the decision of the Commissioner, and dismissing this action with prejudice.

**IT IS SO ORDERED.**

Dated:  August 29, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-02431-JLB